O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| KENNETH ROTSKOFF, JUDITH ROTSKOFF, GERARD GREWE, MICHAEL PRUETT, ET AL. | ) ) ) ) | CASE NO. EDCV 05-0314-AG(OPx) |
| | ) | FINDINGS OF FACT AND |
| Plaintiffs, | ) ) | CONCLUSIONS OF LAW |
| v. | ) ) | |
| WESTER S. COOLEY and ROSEMARY H. COOLEY, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Plaintiffs Kenneth Rotskoff, Judith Rotskoff, Gerard Grewe, and Michael Pruett ("Plaintiffs") filed this action against Wester Cooley and Rosemary Cooley in April 2005. Default judgment was entered against Wester Cooley, and the only remaining Defendant to the action is Rosemary H. Cooley.  Plaintiffs seek recovery of $410,000 from Rosemary Cooley under a claim for "money had and received."

1  **FINDINGS OF FACT**

2

3  After reviewing and evaluating all evidence presented by the parties, the Court makes the

4  following findings of fact, including any findings of fact found in the Conclusions of Law.  The

5  findings of fact are based largely on an evaluation of the credibility of witnesses at trial.

6

7  **1.  THE PARTIES AND JURISDICTION**

8

9  The Court finds that Plaintiffs Kenneth Rotskoff, Judith Rotskoff, and Gerard Grewe are

10  citizens and residents of Missouri.  (Stipulation of Facts ("Stipulation") ¶ 1a.)  Plaintiff Michael

11  Pruett is a citizen and resident of Wyoming.  (*Id*. at ¶ 1b.)  Wester Cooley and Rosemary Cooley

12  are both citizens and residents of California.  (*Id*. at ¶ 2.)  Because there is complete diversity

13  between the Plaintiffs and Defendants in this action, and because the amount in controversy

14  exceeds $75,000, the Court has jurisdiction under 28 U.S.C. 1332(a).

15

16  **2.  WESTER COOLEY'S FRAUDULENT SCHEME**

17

18  The Court finds that from February 2002 through April 2002, Wester Cooley

19  orchestrated the fraudulent sale of unregistered securities to Plaintiffs.  (Stipulation ¶¶ 7-8.)

20  During this period, Wester Cooley directed DeElroy Beeler to solicit Plaintiffs to invest money

21  in AskGT.com, Inc.  (*Id*. at ¶ 5.)  Beeler made fraudulent representations to Plaintiffs regarding

22  AskGT.com, Inc., including that it was a profitable company that had applied for and obtained

23  patents related to online auctions, and that it was soon to be acquired by eBay for a price of $20

24  to $25 per share.  (*Id*. at ¶ 9.)  In fact, AskGT.com, Inc. had submitted no patent applications and

25  received no patent rights, and eBay never expressed interest in acquiring the company.  (*Id*. at ¶

26  10.)  The sale of stock in AskGT.com was nothing more than a scheme to sell unregistered,

27  worthless securities.  (*Id*. at ¶ 11.)

28

1    Relying on the representations and omissions of Wester Cooley and DeElroy Beeler,
2    Plaintiffs purchased shares of AskGT.com, Inc. stock in the following amounts: (1) Plaintiffs
3    Kenneth and Judith Rotskoff purchased 334,500 shares for $671,500; (2) Plaintiff Gerard Grewe
4    purchased 100,000 shares for $200,000; and (3) Plaintiff Michael Pruett purchased 26,425 shares
5    for $40,000.  (*Id*. at ¶ 12).

6    Plaintiffs and others who invested in AskGT.com, Inc. brought suit against AskGT.com,
7    Inc. in the United States District Court for the Eastern District of Missouri.  AskGT.com, Inc.
8    failed to appear in that action, and in February 2003 a default judgment of $1,857,000 was
9    entered against it.  (Plaintiffs' Proposed Findings of Fact and Conclusions of Law ("Plaintiffs'
10   Proposed Findings") ¶ 20.)  A second action filed by Plaintiffs and others alleged that Wester
11   Cooley defrauded investors in his individual capacity.  In February 2005, a jury verdict was
12   entered against Wester Cooley in that case in the amount of $1,171,000.  (*Id*. at ¶ 21.)

13

14   **3.      TRANSFER OF THE FRAUDULENTLY OBTAINED FUNDS**

15

16   The Court finds that in April 2002, each of the Plaintiffs wired funds into the bank
17   account of Rose Laboratories, Inc., a company owned by Rosemary Cooley, as payment for
18   shares of AskGT.com, Inc.  (Plaintiffs' Proposed Findings ¶ 14.)  Plaintiffs Kenneth and Judith
19   Rotskoff wired $200,000 to a bank account in the name of Rose Laboratories, Plaintiff Gerard
20   Grewe wired $200,000 to this account, and Plaintiff Michael Pruett wired $10,000 to this
21   account.  (*Id*. at ¶ 13.)  During April 2002, "investors" in AskGT.com other than the Plaintiffs
22   were also wiring funds to the Rose Laboratories account.  (Plaintiffs' Ex. 30A.)  Rose
23   Laboratories was a small, nutritional products distribution business founded by Rosemary
24   Cooley, who was its president and sole shareholder.  (Stipulation ¶ 10d; June 2004 Deposition of
25   Rosemary Cooley 18:24-20:14; Affidavit of Rosemary Cooley  ¶ 10.)  Wester Cooley served as
26   the chief executive of Rose Laboratories.  (Stipulation ¶ 10d.)  Other than Wester Cooley's
27   involvement with both entities, Rose Laboratories was wholly unrelated to AskGT.com, Inc.

28

1    (*Id.*)  The Court finds that Rosemary Cooley's role in the operations of Rose Laboratories during

2 the time period relevant to this action was limited to customer relations and development of

3 promotional materials, and that Wester Cooley controlled the company's finances.  (Trial

4 Transcript 56:23-57:8, 108:14-110:16.)  The Court also finds that Rosemary Cooley had no

5 knowledge of the transfer of Plaintiffs' funds into the Rose Laboratories account.  (Trial

6 Transcript 33:9-34:5, 106:23-107:2.)

7       Within one week of Plaintiffs' wire transfers to the Rose Laboratories account, Wester

8 Cooley instructed the bookkeeper for Rose Laboratories to disburse the funds to him in the form

9 of two cashier's checks totaling $538,000.  (Plaintiff's Ex. 30B; Trial Transcript 96:9-18.)  On

10 May 2, 2002, Wester Cooley negotiated the cashier's checks at Washington Mutual Bank in

11 Palm Springs, California.  Wester Cooley deposited $138,000 of the funds from the cashier's

12 checks into Washington Mutual Bank account #393-222074-6 ("the '074-6 account"), held

13 jointly by Wester and Rosemary Cooley.  (Plaintiffs' Ex. 17.)  The remaining $400,000 was paid

14 to Cane & Company LLC Trust Account in the form of a cashier's check issued by Washington

15 Mutual Bank.  (*Id.*)  On June 5, 2002, account #440-476272-9 ("the '272-9 account") was

16 opened at Washington Mutual Bank in Rosemary Cooley's name only, (Plaintiffs' Ex. 15), and

17 on the same day $400,000 was withdrawn from the Cane & Company LLC Trust Account and

18 deposited into the newly opened '272-9 account.  (Defendant's Ex. 59; Plaintiff's Ex. 15.)  The

19 '272-9 account was closed on June 13, 2002, upon withdrawal of the entire balance of $400,000

20 plus $254.04 in accrued interest.  (Plaintiffs' Ex. 15.)

21       The Court finds that both the '074-6 account and the '272-9 account were valid bank

22 accounts opened in Rosemary Cooley's name, and with her knowledge.  (Plaintiffs' Exs. 15, 17.)

23 The Court also finds that the multiple transfers of Plaintiffs' funds were carried out by Wester

24 Cooley, and that Rosemary Cooley had no knowledge either of the existence of the fraudulently

25 obtained funds, or of the movement of these funds in and out of various bank accounts held in

26 her name.  Finally, the Court finds that Rosemary Cooley did not use or benefit from any of

27 Plaintiffs' funds, as these funds were continuously controlled by Wester Cooley and ultimately

28

1  distributed to himself and DeElroy Beeler.  The Court bases these finding on the parties'

2  exhibits, and on the credible testimony offered at trial.

3

4  **CONCLUSIONS OF LAW**

5

6       The Court makes these conclusions of law, including any conclusions of law found in the

7  Findings of Fact.

8       Plaintiffs' action against Rosemary Cooley is based on the theory of "money had and

9  received."  An action for money had and received "is governed by principles of equity, although

10 the action is at law," and can be "maintain[ed] in all cases where one person has received money

11 or its equivalent under such circumstances that in equity and good conscience he ought not to

12 retain."  *Philpott v. Superior Court*, 1 Cal. 2d 512, 523 (Cal. 1934) (quoting *Bd. of Highway*

13 *Comm'rs v. City of Bloomington,* 253 Ill. 164, 174 (Ill. 1912)).  This theory is "available in a

14 great variety of situations," including those where plaintiffs seek "to recover money paid under

15 mistake, fraud, or coercion where no contractual relationship is involved."  4 Witkin, Cal.

16 Procedure (4th ed. 1997), Pleading § 552, p. 612; *see also*, *e.g. Schultz v. Harney*, 27 Cal. App.

17 4th 1611, 1623 (Cal. Ct. App. 1994).  "An action for money had and received 'may be

18 successfully maintained even though not founded upon allegations showing an express privity of

19 contract between the parties.'"  *Coombs v. Minor*, 60 Cal. App. 2d 645, 649 (Cal. Ct. App.

20 1943).

21      The Court concludes that, for the reasons described here, Rosemary Cooley is not liable

22 to Plaintiffs.  There may be other reasons why Plaintiffs cannot recover, particularly relating to

23 the tracing of funds, but they need not be addressed since they do not change the result.

24

25

26

27

28

**1.    ROSEMARY COOLEY IS NOT LIABLE FOR MONEY HAD AND RECEIVED IN HER CAPACITY AS PRESIDENT AND SOLE SHAREHOLDER OF ROSE LABORATORIES**

Plaintiffs contend that the transfer of their fraudulently obtained funds into the Rose Laboratories bank account requires a finding that Rosemary Cooley had and received those funds in her capacity as president and sole shareholder of Rose Laboratories.  The Court holds that Rosemary Cooley did not receive Plaintiff's funds in this capacity, and the claim for money had and received therefore fails in this regard.

"Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done." *Michaelis v. Benavides*, 61 Cal. App. 4th 681, 684 (Cal. Ct. App. 1998) (quoting *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.* 1 Cal. 3d 586 (Cal. 1970)) (internal citations omitted).  In this case, Rosemary Cooley was president and sole shareholder of Rose Laboratories, and as an officer of the corporation she may be held personally liable if she "participate[d] in the wrong or authorize[d] . . . that it be done." *Id*. Rosemary Cooley's potentially wrongful conduct was her knowledge of the money received in the Rose Laboratories bank account, and her failure to take corrective action. *Frances T. v. Village Green Owners Assn*., 42 Cal. 3d 490, 508-09 (Cal. 1986) (holding that a tort claim may be maintained against corporate directors in their personal capacity if "although they specifically knew or reasonably should have known that some hazardous condition or activity under their control could injure plaintiff, they negligently failed to take or order appropriate action to avoid the harm.").  If she knew that fraudulently obtained funds were being transferred into the Rose Laboratories account, then no corporate protection exists and she "would be equally liable with the corporation for its torts in which [s]he participated." *See Dwyer v. Lanan & Snow Lumber Co.*, 141 Cal. App. 2d 838, 841 (Cal. Ct. App. 1956).

The Court has made the factual finding that Rosemary Cooley was unaware of Wester

Cooley's use of the Rose Laboratories bank account to further his scheme of defrauding Plaintiffs.  Accordingly, Rosemary Cooley did not "participate in the wrong or authorize or direct" any wrongful acts that might subject her to liability in her personal capacity.  *Michaelis*, 61 Cal. App. 4th at 684.  Because Rosemary Cooley did not receive Plaintiffs' funds, either actually or constructively, in her capacity as president and sole shareholder of Rose Laboratories, she is not liable for money had and received in this capacity.

## 2.     ROSEMARY COOLEY IS NOT LIABLE FOR MONEY HAD AND RECEIVED IN HER INDIVIDUAL CAPACITY

Plaintiffs alternatively argue that the deposit of fraudulently obtained funds into bank accounts held in Rosemary Cooley's name, both individually and jointly with Wester Cooley, require a finding of liability.  To resolve this issue, the Court must first determine whether the deposit of funds into a bank account establishes the account holder's receipt and possession of the funds.  If receipt and possession are established, the Court must then determine whether receipt and possession alone are sufficient to prove a case for money had and received.

### 2.1    Rosemary Cooley Received and Possessed the Plaintiffs' Funds

Under California law, "[t]he owner of the legal title to property is presumed to be the owner of the full beneficial title." *People v. Seeman*, 42 Cal. 4th 79, 88 (2007) (citing Cal. Evid. Code § 662); *see also Rice v. Ransom*, 186 Cal. App. 2d 191 (Cal. Ct. App. 1960) ("When money is paid to or deposited in the bank account of another it is presumed to be due to and belong to the latter").  "This presumption may be rebutted only by clear and convincing proof." *Seeman*, 42 Cal. 4th at 88 (citing California Evidence Code § 662).

The Court's factual findings that Rosemary Cooley held legal title to the '074-6 and '272-9 accounts and that Plaintiff's funds were deposited in those accounts, creates a presumption that

1   Rosemary Cooley was the "owner of the full beneficial title" of the funds during the time that

2   they remained in those accounts.  Because Rosemary Cooley has not rebutted this presumption

3   with clear and convincing proof, the Court holds that she received and was in possession of

4   Plaintiff's funds during the time that they remained in the  '074-6 and '272-9 accounts.

5

6   ## 2.2    Receipt and Possession of Funds is Insufficient to Prove a Claim for Money

7   Had and Received

8

9        The parties agree that for liability to attach under a claim for money had and received, it

10  must be shown that the defendant received the money "under such circumstances that in equity

11  and good conscience he ought not to retain."  *Philpott*, 1 Cal. 2d at 523.  Under this definition, a

12  claim for money had and received clearly requires something more than the defendant's receipt

13  of funds, otherwise the references to "equity and good conscience" would be unnecessary.  The

14  parties disagree on what that "something more" is.  Plaintiffs argue that in addition to the receipt

15  of funds, it is only necessary to show that the defendant had no right to the funds received.

16  (Plaintiff's Post-Trial Brief at 2:14-3:28.)  Defendant contends that the receipt of funds must be

17  accompanied by unjust enrichment, and that a defendant's duty of restitution is limited to the

18  amount of her personal benefit.  (Defendant's Post Trial Brief at 4:12-6:3.)  The Court holds that

19  a showing of either knowledge of the fraud, or unjust enrichment from the fraudulently obtained

20  funds, is essential to Plaintiffs' claim that "equity and good conscience" require Rosemary

21  Cooley to pay restitution in this case.  This holding is consistent with the case law and other

22  relevant legal authorities.

23        In *Russek v. Tomark*, 152 Cal. App. 2d 131 (Cal. Ct. App. 1957), plaintiffs and defendant

24  were former partners on a failed business venture.  When the business went into bankruptcy the

25  four plaintiffs sued the defendant, who had held the title of president, for return of their capital

26  contributions to the business.  *Id*. at 132-33.  The facts showed that defendant "kept none of the

27  money for himself, but put it into the corporation's bank account as it was paid to him."  *Id*. at

28

133.  The court in *Russek* upheld the lower court's dismissal of the plaintiffs' claims for money had and received, reasoning that the defendant "did not receive the money for his use or benefit, and in the facts in this case in equity and good conscience he is not bound to return it."  *Id*. at 134.  While there are obvious factual differences between *Russek* and the case before the Court, *Russek* makes clear that receipt alone is generally insufficient to establish liability for money had and received.

That a plaintiff must establish something more than the defendant's receipt of money is a recurring theme in cases addressing claims for money had and received.  In *Pollak v. Staunton*, 210 Cal. 656 (1930), the California Supreme Court considered a claim for money had and received where plaintiff sought to recover money paid for shares of unauthorized and void corporate stock.  The California Supreme Court took the opportunity to review the underlying purpose of a claim for money had and received: "The action for money had and received is based upon an implied promise which the law creates to restore money which the defendant in equity and good conscience should not retain.  The law implies the promise from the receipt of the money *to prevent unjust enrichment*."  *Pollak*, 210 Cal. At 665 (emphasis added).

*Gray v. Huffaker*, 176 Cal. 516 (1917), is another California Supreme Court case addressing a claim for money had and received.  In *Gray*, the defendant husband paid off a mortgage on his wife's property with money which had been held in trust for the plaintiff.  *Id*. at 517.  Holding that the wife was required to pay restitution to plaintiff, the court in *Gray* emphasized both the wife's knowledge that the money used to pay of the mortgage rightfully belonged to plaintiff, and the fact that the wife "received a benefit" from her husband's use of plaintiff's money.  *Id*.  Again, the court's finding of liability under a claim for money had and received was based on plaintiff's showing of something more than mere receipt of funds.

Similarly, the court in *National City Bank v. Stang*, 84 Ohio App. 3d 764 (Ohio Ct. App. 1992), emphasized the role of unjust enrichment in a claim for money had and received.  In *National City Bank*, the court considered a claim for money had and received brought by a bank against a husband and wife.  The wife had fraudulently obtained a loan from the bank by forging

9

1   her husband's signature to the loan documents, and the loan proceeds were deposited into a joint

2   checking account held by husband and wife.  *Nat'l City Bank*, 84 Ohio App. 3d at 765-66.  There

3   was no evidence that the husband ever knew of the fraudulent loan, or benefitted from its

4   proceeds. The appellate court reversed a finding of liability against the husband.  The court held

5   that while "[t]here are occasions where an innocent party may be liable for restitution to a

6   defrauded party . . . [i]n such a case the innocent party is liable for restitution only if actually

7   enriched and only if there has been no change of circumstances making it inequitable to require

8   restitution." *Id*.  As is true in the present case, the defendant in *National City Bank* both received

9   and possessed the plaintiff's fraudulently obtained funds when they were deposited in his joint

10  checking account.  But despite this receipt and possession, the court held that the husband was

11  not liable because the bank failed to prove either that he knew of the fraudulent loan, or that he

12  benefitted from its proceeds.  *Id*. at 767-68.

13         The decision in *National City Bank* relies in part on § 142 of the Restatement (First) of

14  the Law, Restitution.  Section 142(1) states that a person's right to restitution from another who

15  has received a benefit "is terminated or diminished if, after the receipt of the benefit,

16  circumstances have so changed that it would be inequitable to require the other to make full

17  restitution."  Rest. 1st of Restitution, § 142.  Comment (b) to § 142 provides an example of a

18  change in circumstances that would terminate the right to restitution, describing a situation

19  where money is fraudulently obtained by a party and deposited into the defendant's bank

20  account.  If the defendant benefits from the deposit, even without knowledge, then he is under a

21  duty of restitution.  But if the money is withdrawn from the account before defendant becomes

22  aware of its existence and before he benefits from it, then the duty of restitution is terminated.

23  Rest. 1st of Restitution, § 142, comment (b).  "The fact that the [defendant] has received no net

24  benefit from the payment would prevent the existence of a duty of restitution." *Id*.

25         Thus, the Court can't accept Plaintiffs' argument that they can prevail on the claim for

26  money had and received without showing anything more than the simple fact of Rosemary

27  Cooley's receipt of their funds.  Applying the case law to the specific facts of this case,

28

principles of equity require that Plaintiffs also establish either (1) that Rosemary Cooley shared culpability in receiving the funds, or (2) that Rosemary Cooley actually used or benefitted from the funds received.  If Rosemary Cooley was aware of the fraudulent origins of the funds at the time they were deposited into her bank accounts and took no remedial action, she should be held liable.  If Rosemary Cooley personally used or benefitted from the fruits of Wester Cooley's fraud, even without knowledge of that fraud, she should be held liable.  But if Defendant neither knew of the fraud nor benefitted from the fruits of the fraud, then it is inequitable to hold her liable for mere receipt.

Plaintiffs attempt to distinguish the facts of this case from the facts of the various cases which require that a plaintiff bringing a claim for money had a received prove that the defendant did something more than receive funds.  Despite these efforts, Plaintiffs cite no case that applies the claim for money had and received to reach the result they propose in this case: finding a defendant liable based solely on the receipt of fraudulently obtained funds, without proving that the defendant was either aware of the fraud or benefitted from the funds.

### 2.3    Conclusion

The Court has made the factual findings that while Rosemary Cooley received Plaintiffs' funds when they were deposited in her joint and individual bank accounts, she was not aware of the deposits and did not benefit from them.  And contrary to Plaintiffs' contention, the Court will not infer use or benefit "from the fact that the monies came into her possession when they were deposited into bank accounts opened and owned by her."  (Plaintiffs' Post-Trial Brief at 7:7-11.)  Because Plaintiffs have not proven by a preponderance of the evidence that Rosemary Cooley was aware of the deposit of Plaintiffs' funds into her accounts, or that she benefitted from the deposits, it would be inconsistent with principles of "equity and good conscience" to require that she pay restitution.  *See Philpott*, 1 Cal. 2d at 523.

**3.     CONCLUSION**

The Court is sympathetic to Plaintiffs' plight as victims of a sophisticated securities fraud scheme, and understands their desire to pursue restitution from all individuals associated with the perpetrators of the fraud.  But because Plaintiffs have not shown by a preponderance of the evidence that Defendant Rosemary Cooley was either aware of the fraud or directly benefitted from it, principles of equity do not support requiring her to provide restitution for Plaintiffs' losses.

**<u>DISPOSITION</u>**

Defendant's counsel is ORDERED to prepare the judgment and serve it on Plaintiffs by September 1, 2008.  Plaintiffs shall have 15 days from the date of service to object to the proposed judgment.  If no objection is received within 15 days, the judgment will be entered immediately.

IT IS SO ORDERED.

DATED: August 13, 2008

_____
                Andrew J. Guilford
              United States District Judge